Good morning, Your Honor. Thank you. May it please the Court. I'm Alex Golubitsky on behalf of the plaintiffs and appellants Saeed and Karen Hassan. Good morning, sir. And how much time are you reserving, sir? I'd like to reserve five minutes for rebuttal. And I want to make sure I pronounce your name correctly. Golubitsky? Yes, Your Honor. That's correct. Okay. Thank you so much. Go ahead, sir. Thank you very much. And this is my first time appearing in front of this court. I'd like to thank the panel for the opportunity to do so. Of course. What we have at stake in this case, is whether an aggrieved individual who has been subject to a wrongful levy by the Bureau of Internal Revenue must, under the Mirror Code, follow a Treasury regulation that, by its own terms, is impossible to follow. That what the plaintiff's claim has been brought in this case is that it was a claim under 26 U.S.C. 7433, as mirrored to the Virgin Islands under the Naval Services Appropriation Act. And as a result of bringing this claim, the government, the Bureau of Internal Revenue, has moved to dismiss the plaintiff's complaint, and that motion was granted by the district court on a number of grounds. One of those grounds being that the plaintiffs failed to exhaust appropriate administrative remedies in bringing this, prior to bringing the claim in the court. So, if I understand your argument, the two letters, because they allude to installment, but from your perspective the government didn't specifically respond to your entreaty for a, to start an installment, is sufficient to have satisfied whatever administrative remedies you needed to pursue? Not exactly, Your Honor. The two letters that were sent by the plaintiffs to the Bureau of Internal Revenue were sufficient to satisfy 26 U.S.C. 6159C, as mirrored to the Virgin Islands, which states that if somebody owes less than $10,000 under the Mirror Code to the Bureau of Internal Revenue, they are entitled to an installment agreement, a guaranteed installment agreement, if you will. So your position is those letters are not your exhaustion. You're saying exhaustion couldn't occur because there wasn't the appropriate official that's identified in the regulation. That's correct, Your Honor. And to the extent that any further actions by the plaintiffs would have been required, it would have been futile. And if you look at Virgin Islands law Your letter did seem to suggest that you were going to seek further relief by way of an abatement. Did it not? I'm sorry? Did your letter not suggest that you were going to seek further relief in terms of an abatement? An abatement of the penalties? Yes. Yes. Well, that's not a total acceptance, is it, of the amount due? Well, Your Honor, I think that they as a predicate to their you can accept the amount due. I mean, a penalty abatement is not saying we don't owe the tax. A penalty abatement, a request for penalty abatement is saying that due to reasonable cause, some of these penalties can be excused. So I don't think by referencing that in the future we're going to seek an abatement of some of these penalties, they're acknowledging that the taxes is somehow or alleging that the penalty is somehow wrongfully assessed. Yes, but these letters had a condition, and the condition was release the levy. How is that a proper installment agreement under the statute in the regulation? Well, I don't think that it's a conditional request to say release the levies. What the plaintiffs were attempting to do in seeking these, in seeking this installment agreement is saying, if you want us to be able to fulfill this installment agreement, to have money to do so, then we would need to be able to get the money from our bank account in order to make this installment agreement. I'd just like to read back the letter. Additionally, this offer for an installment agreement is conditioned upon the release of the levies issued against the taxpayer, so it was a conditional document. So putting aside the exhaustion matter for a moment, the four corners of your pleading does not seem to demonstrate the existence of an installment agreement that was pending with the IRS, given the fact it was conditional, and we don't have anything before us that says it was being processed, which is what pending means. So it doesn't your don't we have doesn't the complaint just fail on those grounds? No, Your Honor, because the whether or not if the BIR, if that was the case, and the Bureau of Internal Revenue could prevent any installment agreement ever from being pending just by simply not responding to a request for the installment agreement, and if there was a flaw, as the Court indicates in the request for the installment agreement that it was conditioned on a request for a release of the levy, then the BIR, I think, should notify the plaintiffs and say, this request is, you know, we are willing to discuss this request for you, or if that were the case, we are rejecting this request for an installment agreement, and once the BIR says we're rejecting this request for an installment agreement, then there are other rights that attach. I understand your position that you can't – silence is not sufficient. That doesn't absolve them. But in the December letter, it recounts a conversation that took place on December 12th, in which the BIR indicated that they would move forward with the levy, and it continues by stating, you stated the taxpayer must use a form 9465 to request an installment agreement. We respectfully disagree. So doesn't this letter communicate – remember, we're at the pleading stage, we have to accept everything in front of us as accurate – that the BIR did respond, told the taxpayer what to do, the taxpayer has not decided not to do it. So I don't think you really have a circumstance of nonresponsiveness. You just have a disagreement of how to produce the request, yes? No, Your Honor, because what happens is when the BIR says put this on a form 9465, they're not – that's not a rejection of the installment agreement request. That's fully negating its existence, saying you have not put an installment agreement request in front of us by virtue of sending us a written request for the same. I don't understand that. If they're telling you the manner in which you need to proceed, and then you choose not to proceed in that manner, how can anyone deduce from those set of facts that an agreement is in place, or anything approaching an agreement is in place? Well, Your Honor, I don't think that you can say that there's an agreement in place based on that. But I also don't think that you can say, well, necessarily that's a rejection of the installment agreement request. And I would also point to court – Well, I'm so sorry. I'm going to interrupt you. I beg your pardon. But the form that they've asked you – they asked your client to fill out is the form that in their nomenclature is the first step to an installment agreement, right? That's what their position is, yes, Your Honor. Well, their position in this particular instance is the only one that matters, because if they're telling you that that's the way in which you have to proceed in order for us to evaluate your request for an installment letter, isn't the failure of your client to do that an acquiescence in the fact that they didn't exhaust because they didn't do what they were supposed to? And isn't Judge Swartz's proposition correct that they didn't exhaust because they didn't follow instructions? Well, Your Honor, I would also point out that the levy – if what the Bureau of Internal Revenue did in this December 12th telephone conversation is to say, we are rejecting this installment agreement offer because it's not provided on the correct form, then under 6159, the plaintiffs have 30 days before they can – before the BIR can issue a levy, and it is also acknowledging that a levy that was issued prior to December 12th was issued while an installment agreement was pending, so it can't be both. Did you submit the form in – within the prescribed time? The 9465? Yes. No, Your Honor, that's not in the complaint, so I don't think I can argue that we did submit it. Right. So where does that leave us? Well, it leaves you with a wrongful levy, because if the BIR is saying, we are rejecting this installment agreement request because it's submitted on an improper form, then it's also acknowledging that the levy it issued prior to making that statement to the taxpayer was issued while an installment agreement request was pending. No, actually, I think what it's saying is that there was no – your document did not constitute an installment agreement for us to reject. If you want to make a proposal, you ought to do it on this form. No, it was not pending. Well, Your Honor, if the BIR is saying that there's – that we have insufficient information based on this to consider an installment agreement request, I don't see how that can be anything other than a rejection. The BIR is saying that the documents, the two documents that you submitted are, in essence, each a nullity. That's what they appear to be saying. And if you want us to, in due course, consider your request, then you have to comply with our regulations and, you know, file the correct form. And if you concede that the correct form wasn't filed in the time prescribed, then that would mean that what you've described as a wrongful levy is certainly within their purview. Your Honor, the – there isn't a regulation that exists that says, file an installment agreement request on a form 9465. So you – so you can't say that by not doing so, the plaintiffs violated some regulation because that regulation doesn't exist. What is the form 94 – I'm not good with the numbers. 9455 is it? 9465, Your Honor. 65, right. Okay. I'm so sorry. What does the form 9465 say on it? Your Honor, I don't – from my own recollection, I can't remember the full text of what the form says. I believe the caption of the form is, request for an installment agreement. Okay. I think that's all I need. So it says – this 9465 says, request for an installment agreement. They have none. Just take another case, not your client's case, right? There's $10,000 owed – not – less than $10,000 – $8,000 owed, and there's no letters written. Someone goes in and gets the 9465, but they don't submit it. Is it a wrongful levy if within the time allotted, the BIR then issues a levy attempting to attach a piece of property? If they have not submitted anything? Yeah. I'm giving you a hypothetical. No letters. Okay. Right? You represent me. I owe $8,000. You don't submit letters. You go down to the BIR. What do I do? Here's the form. The form says, request for an installment plan. I go, oh, God, I don't want to sign a request for an installment plan. So none gets filed. I presume that in that circumstance, at the end of the 30 or 60 – I believe it's 60 days, the BIR would be within its rights to attempt to levy my property. Yes? Your Honor, if there's never been a request for an installment agreement, then you're right. There are no rights that would attach – that would prevent a levy. But I don't think that you can look at the letters that the plaintiff sent to the BIR and say, those are not requests for an installment agreement. And I also don't think that there's any regulation or statute that says a request for an installment agreement has to be on a Form 9465. That is simply a way of presenting the information that the BIR needs in order to determine whether an installment agreement is appropriate. So it's okay for any person that has a tax debt to write a letter and that constitutes a request for an installment agreement? Yes, Your Honor. A letter that – it could be two sentences. I hear by – I owe $10,000 and I request an installment agreement. If I can point to an example – I mean, that would make 9465 totally meaningless. But if I can point to an example, you are allowed right now with the Internal Revenue Service to go online and request an installment agreement, I believe if you owe under $50,000. Well, you don't file a Form 9465 when you go through their online portal. You're submitting a written request that the IRS has said, okay, here's an additional avenue. Yes, but you're complying, right, with their procedure if you go online and fill out their form. Well, that's correct, Your Honor. But the BIR has never issued a regulation that says you have to file a Form 9465 in order to get into an installment agreement. This is based on a telephone conversation that says this is what we want. And in the course of the same telephone conversation, the plaintiffs have pledged, no, you have the information necessary to determine whether or not we are eligible for a guaranteed installment agreement. Well, one of the – let's just move to just a slightly different element of your cause of action. It says that you have to identify an employee or an officer who engaged in this negligent, intentional, or reckless behavior. Where in your complaint do you identify an employee or officer? We identify the employee or officer who issued the levy. The levy attached to the complaint? No, Your Honor. So that nothing in the four corners of the complaint would demonstrate that that element had been satisfied, then, am I correct, if that's who the employee was? Well, Your Honor, the complaint, the First Amendment complaint spells out what the negligence was. I understand your position on that. Mine's different. Who's the actor? Because the way this statute is written, it requires you to identify an actor, either an employee or an officer. And looking at the four corners of your complaint, I did not see an employee or officer identified as being the actor. Well, Alana Braitwit is identified. She's the person who received the letter. She's identified as – Was she the person – you said that the negligent act was the imposition of the levy. What in the four corners of the complaint would tell a reader she was the one that imposed the levy? That she is the employee of the Bureau of Internal Revenue who is managing this taxpayer case. And so the levy would not have been issued. What we've got is we've got this request for an installment agreement, right? And it's in front of Alana Braitwit. So if a levy got issued and she has this request for an installment agreement, then by definition, she's the person who's negligent and not saying, hey, we can't issue this levy because we have this request for an installment agreement. I have one other question. It's going to sound really small. How do you spell your client's last name? Because all the briefing in front of us is Hassan with an A-N. The documents submitted to the IRS are Hassan with an E-N. So how do you spell your client's last name so that we can make sure our materials are accurate? I apologize for that, Your Honor. It's with an A-N. And I'm not sure how – So even the tax documents are incorrect then? Because if you look at your client's signature on one of the tax documents, it says E-N. Do you want to check? Your Honor, I'm sorry. I misspoke. I've been – it should be with an E-N. And that is my fault. I misspoke. No problem. Thank you, Your Honor. Thank you. May it please the Court. Suleyma Walker for the Government of the Virgin Islands and the Virgin Islands Bureau of Internal Revenue. We find that the district court did not err in dismissing this case based on the fact that the Hassans never demonstrated that there was a reckless act, an intentional act, or a negligent act as required by Section 7433, which is the basis of their action, the statute that they brought their action. Does 7433 require a specific identification of an officer or employee? Yes. We read it to specify either an employee or a specific action of an employee outside of just the levy. If you – How would someone from the public know that? Well – So that they could identify something, other than whatever correspondence they received. Right. And I – I agree that it would be very difficult to figure that out. But I do think that based on these facts that we have before us, we see that they were working with the Hassans. They had communications. They told them what they needed to do. So then the Hassans did identify the correct people? I think that the – that kind of goes to whether or not it was sent to the correct person. I think that they did send it to the correct person. The facts show that the Hassans already had an agreement to pay off this same sum. It started at $30,000 in 2012. And it got down to this $5,800 and odd dollars. And along the way, it stopped payment. I just want to make sure that if we identify this as a factor that should be considered, that we have it correct. And that is, you're now telling me that the Hassans did correctly identify someone who, in compliance with 7433, was either an officer or an employee? No. No. That's not what I'm saying. I'm saying that they were in contact with persons at BIR that were able to go through the process with them. I don't think that they have identified anyone who acted – Fabulous. Then tell me how they could possibly do that and why we should say that that's a deficiency in their pleading. How they could – Possibly identify an officer or employee. I – in this particular – I will be – I'm not normally do – I don't normally do tax-related things. But I do believe that although we have the mirroring statute and we don't have an exact person named a compliance – I think it's a tax – I'm going to interrupt you because you guys are talking about two different things. You're speaking about to whom one could exhaust their administrative remedies. Judge Greenaway is asking you, for the purposes of a 7433 violation, does a person have to be identified as the officer or employee who committed the negligent act? I would think so. I think so. I don't think it's possible for there to be negligence or recklessness without someone doing it. And Judge Greenaway's question, I believe, is how would a taxpayer know who that allegedly negligent person was? How would they know that? I would – That was a great interpretation of what I thought was a fairly clear question. I apologize. I – thank you for the clarification, Judge Schwartz. I would have to say it would be the person that they have contact with, whomever they are in communication with, whoever has their case. They may speak to someone and they say, oh, well, so-and-so said or so-and-so did. I don't think it's impossible if that's what you're getting at. I don't believe that, no. Based on what was filed, no one was identified and no act was identified. Based on what was filed in response to counsel's letter, I understand the BIR sent him a form 9465. Is that right? Yes. What does that form ask for that was not contained in his letter? It asks for additional information. It asks you to show that you cannot pay what was owed. It also goes to – Say that again. It has to – you have to identify. You have to show that you are financially incapable of paying that sum of money. It has some of the personal information, contact information, location, that kind of information. What was sent was from counsel and it did not include personal information of the Hassans, nor did it go to whether or not they could pay that sum. So it was deficient. Okay. From your standpoint, they could very well pay off the balance. That's the standpoint of BIR. Financially. Yes. As a matter of fact, you seized that much, didn't you, from their bank accounts? Yes. We have a case called Venon with regard to whether exhaustion is jurisdictional. My question for you, is there any vibrancy to Venon left? If so, what is it? And if not, do we just, you know, not rubber stamp, but follow our ball and this just becomes a non-issue? Yeah, and I have to be completely honest. I'm not familiar with Venon. I would have to submit a supplemental brief to give you a better, more accurate answer, complete answer. Let me ask this. Maybe this will refresh your memory as to what it is. The doctrine of exhaustion. I believe you argued to the district court that it was jurisdictional. Is that correct? Yes. Do you, does this refresh your memory? Do you, with that in mind? I didn't argue below. And are you familiar with the district court's opinion? Yes. And are you aware that the district court did an analysis and concluded that our Venon case is probably in doubt because of the Supreme Court's case in Arbaugh that talks about when exhaustion requirements are jurisdictional or not. Are you familiar with that? No, I'm not familiar with that, with that district court ruling. No. So you have not seen the district court's opinion that was issued in our case in the Hassan matter some weeks ago? Some weeks ago, no. I have the incomplete, the order. But you have not seen the district court's opinion? No. And I went to the, I checked the docket on Sunday. Okay. Well, let me ask you a slightly different question. There was an argument made to the district court about failure to exhaust to that body, but not made to us. Are you abandoning an exhaustion argument in front of our court? I, the brief that was filed was directly to the district court's one page that dismissed it on a failure to state a claim under 12b-6. I see. That's what we were focusing on. And primarily because lots of things were argued, multiple things were argued. And we felt that based on the order issued by the court, that's what the court's decision would be focused on and issued based upon. So have, have you waived the exhaustion issue before us because of the way it was argued? And your adversary in his brief did have an exhaustion point to which there was no response. So is it fair to say that you are not pursuing exhaustion as a grounds for dismissal, but focusing more on the deficiency in the pleadings from your perspective? No, we're not, we're not waiving it. I, I wrote the brief and I felt that based on the order and the strength of it that I thought the, the lack thereof showing that there was recklessness or negligence or intentionality, that was the strength at which the district court relied. I see, thank you. All right, thank you very much. Thank you. Thank you, Your Honor. I would like to actually speak to Judge Schwartz's question regarding Vennin and Arbaugh. We, I believe that, that the reasoning of Judge Gomez in, in his, in his full decision that he did issue is correct with respect to, to the difference between Arbaugh and Vennin. I think that's also reflected in his one page order, which says that the, that he's dismissing the case on a 12B6 motion. Because if the court had found that there was, that there, it lacked jurisdiction to, to hear, to hear the case, which is what it would have done if it was, he would have done if he was proceeding under Vennin, it would have dismissed it under 12B1. Yeah, but there's two, there, there are two ways to look at, there's two exhaustion issues, right? There's exhaustion, is it jurisdictional? But then there's the subject matter jurisdiction, which you've just alluded to, you know, 12B1, and subject matter jurisdiction, as I understand it, can't be waived and can be looked upon sui sponte by the court. So if, if, if that's so, how do we even get to a determination on the merits under 12B6 if we get stuck on exhaustion? I presume your retort, your initial retort would be, well, you know, we have this futility argument, but I think as we've gone through our colloquy, I'm, I'm, I'm not convinced, I won't speak for my colleagues, that your futility argument has weight because we've identified, you've identified the manner in which the BIR has told your clients exactly what they needed to do and your clients didn't do it. So I'm, I'm, I'm wondering how do we get to even a discussion of 12B6 potential issues, and you, you know, substantively trying to get your, your client's position out there when it looks like, you know, exhaustion is the death knell of your client's claim. Well, Your Honor, I think that you're correct. There are two ways to look at that, and I think that what Judge Gomez was sort of struggling with when he went through his opinion is to say, because if you look at the case under 12B6, as he indicated, then failure to exhaust administrative remedies is really an affirmative defense that has, that has been raised by, by the defendant in this case. And if that's an affirmative defense, then I think that you get into a whole other issue of whether or not this affirmative defense negates the complaint sufficiently that a motion to dismiss can be entered under 12B6. And I completely agree with the Court that the Judge, Judge Gomez could raise at any time a 12B1 issue. It doesn't have to be put in front of him by, by one of the, by one of the parties. He didn't. Even, even based on the order that he issued in... Can we? Can we? Should we? I believe that you can. I think that, I think that it's undeniable that, that, that this Court, any Court, can look at a subject matter jurisdiction argument. But I think that the way that Judge Gomez has framed this in his, in his opinion is the correct way to look at this, which is that it's not a 12B1 issue. It's not a subject matter jurisdiction issue. Failure to exhaust administrative remedies is an affirmative defense, which is, which is, which is raised by the defendant. And it's not a jurisdictional bar to, to bring, to bring the claim. And when you treat failure to exhaust as an administrative, as an affirmative defense, excuse me, then I believe that changes the rubric that you use, that you analyze the complaint under, under 12B6. Because in effect, what, what the defendant has done here is they have, they have in their motion to dismiss, raised additional facts that support their affirmative defense. Namely, exhaustion is not futile, because, because they, they could have done all of these things. And, and that, I think, makes it much more difficult to proceed under 12B6. Also, there are arguments with respect to what did the person who issued the levy know about whether a guaranteed installment agreement was appropriate. That is also raising an additional fact, making 12B6 inappropriate. So when you, I think the distinction here is very important, and I think what Judge If you analyze this futility claim under 12B6, then what you have is you have the defendant raising additional facts in their motion to dismiss, making granting that motion under 12B6 inappropriate. Well, actually, you can look at it, well, you can look at additional facts in consideration of your 12B1. You can't look at additional facts other than the four corners of a complaint with consideration under 12B6. So if they, according to what you've just said, introduce those, we could technically consider it within the rubric of 12B1, but I guess neither here nor there. Your Honor, I, I do think that's correct. My, my entire point is that Judge Gomez did not do that when he, when he issued his opinion. He issued the initial order and the subsequent opinion under 12B6. All right. Thank you. All right. Thank you so much. Thank you for those arguments, and we'll take the matter under advisement. And we stand adjourned. And